**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Craig Thompson, an Arizona resident, | ) | No. CV-10-1885-PHX-LOA |
| | ) | |
| Plaintiff, | ) | **REPORT AND** |
| | ) | **RECOMMENDATION,** |
| vs. | ) | **FINDINGS OF FACT, AND** |
| | ) | **CONCLUSIONS OF LAW** |
| | ) | |
| StreetSmarts, Inc., a Delaware | ) | |
| corporation; Dave Batt, an Illinois | ) | |
| resident, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

A default damages hearing was conducted in open court on April 21, 2011, after entries of default against Defendants StreetSmarts, Inc. and Dave Batt on Plaintiff Craig Thompson's ("Plaintiff") September 2, 2010 Complaint.  Testifying at the hearing was Plaintiff who voluntarily terminated his employment on August 4, 2010 because Defendants failed to pay his salary and other contractual benefits.  Pursuant to General Order 11-3,[1] the undersigned Magistrate Judge recommends that default judgment be entered in favor of Plaintiff against Defendants, jointly and severally, in the amount of $195,319.41 for the reasons set forth in this Report and Recommendation.

---

[1] General Order 11-3, entitled Dismissal of a Civil Case Assigned to a United States Magistrate Judge Absent Voluntary Consent by the Parties Under 28 U.S.C. § 636(c)(1), directs that when a Phoenix Division magistrate judge to whom a civil action has been assigned lacks jurisdiction to proceed, the order or, in this case, the report and recommendation shall be directed to Senior United States District Judge Stephen M. McNamee for ruling. General Order 11-3, www.azd.uscourts.gov at Rules/General Orders.

**I. Background**

This is a breach of employment contract and tort action brought by Plaintiff, a 43-year-old computer software engineer, developer and resident of Phoenix, Arizona, arising out of his employment with Defendant StreetSmarts, Inc. ("StreetSmarts"), a Delaware corporation, led by its President and Chief Executive Officer Defendant Dave Batt ("Batt"), an Illinois resident. (Transcript ("Tr.") of April 21, 2011 hearing at 13) In his Verified Complaint, Plaintiff alleges the following causes of action against both Defendants: treble damages pursuant to Arizona Revised Statute ("A.R.S.") § 23-353 (Count I) for failure to pay Plaintiff's wages; fraud and fraudulent misrepresentation (Count II); breach of contract (Count III); breach of the covenant of good faith and fair dealing (Count IV); piercing the corporate veil (Count V); negligent misrepresentation (Count VI); and unjust enrichment (Count VII). (Doc. 1)  Plaintiff seeks "direct and consequential damages," compensatory and punitive damages, reasonable attorney's fees, costs, and pre-judgment and post-judgment interest. (*Id*. at 17)

In his December 6, 2010 default damages hearing memorandum, Plaintiff requests the entry of judgment in the sum of $333,125.81, calculated as follows:

1. $164,479.56, representing treble damages of unpaid wages ($54,826.52) pursuant to A.R.S. § 23-355, doc. 23 at 14;

2. $8,333.33, representing the 25,000 shares of stock and 50,000 shares of stock options owed to Plaintiff. Pursuant to a July 1, 2009 email from Defendant Batt to Plaintiff, doc. 23-1, Exh 3 at 10, there are 13,500,000 StreetSmarts' shares issued and outstanding, and the fair market value of StreetSmarts is $1.5 million, thus making each share worth $0.11. According to Plaintiff, 75,000 shares are worth $8,333.33[2] at the price

---

[2] The Court's mathematical calculation of 75,000 shares at $0.11 per share is $8,250.00. The exact amount is irrelevant because Plaintiff failed to establish the value of the stock with reasonable certainty and an entitlement to stock options at either Plaintiff's termination date or the date the stock were supposed to be distributed to Plaintiff as promised.

1  $0.11 per share, *id.* at 14-15;

2  3. $30,922.18 in unpaid employment taxes that Plaintiff believes he is

3  obligated to pay out of any award. According to Plaintiff, employment taxes consist of

4  15.3% of gross wages for FICA, and 3.5% for FUTA and SUTA. Plaintiff argues that,

5  had StreetSmarts paid Plaintiff as agreed, StreetSmarts would have paid employment

6  taxes of 18.8% on all gross wages. If Plaintiff's gross unpaid wages have been trebled,

7  18.8% of $164,479.56 is equal to $30,922.18, *id*. at 15;

8  4. $14,233.55 in simple interest, at the rate of 10%, on the totals in

9  paragraphs 1-3, above, *id*.;

10  5. $1,190.25 in taxable costs, consisting of the District Court's $350.00

11  filing fee; $93.25, $88.00 and $39.00 in process server fees; and $620.00 in Westlaw

12  computer legal research charges, *id*.;

13  6. $2,925.00 in hourly-based attorneys' fees, consisting of: $1,075.00 in

14  fees incurred for outside contract attorneys and $1,850.00 for legal research and writing,

15  *id*.;

16  7. $111,041.94 for Plaintiff's contingency attorneys' fees. *Id*.

17  Service of the Summons and Complaint on StreetSmarts was made on

18  September 8, 2010 through its statutory agent in Wilmington, Delaware, United States

19  Corporation Agents, Inc., with copies of Plaintiff's Summons and Complaint mailed in

20  accordance with Fed. R. Civ. P. 4(h). (Doc. 7)  As discussed later herein, Batt was served

21  with the Summons and Complaint by alternative service on January 13, 2011 due to

22  Batts' significant efforts to evade service of process. (Docs. 26, Exhibits ("Exhs") 1-2;

23  28; 30, Exhs 1-2)  No answer or other responsive pleading has been filed by, or on behalf

24  of, StreetSmarts or Batt, and the time to do so has expired. The Clerk of Court entered

25  StreetSmarts' and Batts' defaults on October 8, 2010 and March 17, 2011, respectively.

26  (Docs. 9, 33)  On October 22, 2010 and March 31, 2011, Plaintiff filed separate

27  applications for entry of default judgment against each Defendant and requested an

28  evidentiary hearing pursuant to Rule 55(b)(2), Fed.R.Civ.P.  (Docs. 16, 35)  Because the

1    Complaint requested non-liquidated monetary damages, the Court held a default damages
2    evidentiary hearing on April 21, 2011. *Holtsinger v. Briddle*, 2007 WL 1080112, * 1
3    (E.D.Cal. 2007) ("[w]hen a plaintiff's damages are unliquidated (i.e. capable of
4    ascertainment from definite figures contained in documentary evidence or in detailed
5    affidavits) or punitive, they require 'proving up' through an evidentiary hearing or some
6    other means." ) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods.*, 722 F.2d
7    1319, 1323-24 (7th Cir. 1983)). Pre-hearing and post-hearing proposed findings of fact
8    and conclusions of law were filed on December 6, 2010 and May 6, 2011, respectively.[3]
9    (Docs. 25, 43)

10   **II. Jurisdiction**

11            **A. Magistrate judge jurisdiction**

12            On September 13, 2010, Plaintiff consented in writing to magistrate-judge
13   jurisdiction pursuant to 28 U.S.C. § 636(c)(1).  (Doc. 6)  Arguably, when a plaintiff
14   consents in writing to a United States magistrate judge, that magistrate judge has juris-
15   diction to conduct a default damages hearing and enter final judgment against a properly-
16   served defendant even though that defendant has neither appeared in the action nor
17   consented to proceed before a magistrate judge. Technically speaking, the defaulted
18   defendant is not a party because he has failed to appear in the action. *United States v.*
19   *Real Property*, 135 F.3d 1312 (9th Cir. 1998); *United States v. 8136 S. Dobson Street*,
20   125 F.3d 1076 (7th Cir. 1997); *EEOC v. West Louisiana Health Svcs., Inc.*, 959 F.2d
21   1277, 1279-80 (5th Cir. 1992); *Giove v. Stanko*, 882 F.2d 1316, 1318 (8th Cir. 1989).
22   Because the Ninth Circuit has not expressly addressed this issue, and, at least, one circuit

23
24
25

26            [3] Plaintiff's pre- and post-hearing memoranda were not very helpful, especially in
27   identifying Arizona law and the record supporting Plaintiff's numerous causes of action and
     claims. These failures contributed significantly to the delay and difficulty in preparing this
28   Report and Recommendation.

court has found to the contrary,[4] in an abundance of caution, the undersigned will proceed by Report and Recommendation.

**B. Subject matter jurisdiction**

Federal courts have subject matter jurisdiction over controversies between citizens of different states. U.S. Const. Art. III, § 2;  *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 67-68 (1996) ("The Constitution provides, in Article III, § 2, that "[t]he judicial Power [of the United States] shall extend . . . to Controversies . . . between Citizens of different States.").  Pursuant to 28 U.S.C. § 1332(a)(1), a district court has original jurisdiction over all civil actions where the amount in controversy exceeds the sum of $75,000, and the action is between citizens of different states. 28 U.S.C. § 1332(a)(1). "Diversity jurisdiction requires complete diversity between the parties - each defendant must be a citizen of a different state from each plaintiff." *In re Digimarc Corp. Derivative Litig*., 549 F .3d 1223, 1234 (9th Cir. 2008). Thus, in order to properly invoke diversity jurisdiction, Plaintiff must affirmatively allege facts demonstrating that the citizenship of the parties is completely diverse. However, "the diversity jurisdiction statute, 28 U.S.C. § 1332, speaks of citizenship, not of residency. To be a citizen of a state, a natural person must first be a citizen of the United States." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (citing *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989)). "The natural person's state citizenship is then determined by [the party's] state of domicile, not [the party's] state of residence. A person's domicile is [the party's] permanent home, where [the party] resides with the intention to remain or to which [the party] intends to return." *Id*. (citing *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986)). The party seeking to invoke federal jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that grounds for diversity exist, diversity is complete, and his claim is supported with "competent proof" by a preponderance of the evidence. *Sanchez v. Monumental Life Ins. Co*., 102 F.3d 398, 403-04 (9th Cir. 1996); *Indus.*

---

[4] *Henry v. Tri-Services, Inc*., 33 F.3d 931, 932 (8th Cir. 1994) ("We hold that the magistrate judge lacked authority to enter final judgment because [the defaulted party] did not consent to have the matter tried to the magistrate judge.").

1   *Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990).

2          The Complaint alleges that the District Court for the District of Arizona "has

3   [subject matter] jurisdiction over the claims set forth in this Complaint, venue is proper, and

4   the amount in controversy exceeds $75,000." (Doc. 1 at 3) It further alleges, and the

5   uncontradicted testimony of Plaintiff confirms, that Plaintiff "is a resident of the County of

6   Maricopa, State of Arizona[;]" Defendant StreetSmarts "was and is a corporation organized

7   and existing under the laws of the State of Delaware[;]" and Defendant Batt "was and is a

8   resident of Cook County, State of Illinois." (*Id*. at 1-2; Tr. 14-15, 66)

9          Congress and the Supreme Court have provided the meaning of diversity as

10  contemplated by the Constitution when corporations are parties to a lawsuit. Specifically,

11  "the federal diversity jurisdiction statute provides that 'a corporation shall be a citizen of any

12  state by which it has been incorporated and of the state where it has its principal place of

13  business." *Hertz Corp. v. Friend*, ___ U.S. ___, 130 S.Ct. 1181, 1185 (2010) (quoting 28

14  U.S.C. § 1332(c)(1) (abrogating *Tosco Corp. v. Communities for a Better Environment*, 236

15  F.3d 495, 500-502 (9th Cir. 2001) (*per curiam*)). The Supreme Court stated:

16                 We conclude that "principal place of business" is best read as referring to the
17                 place where a corporation's officers direct, control, and coordinate the
                   corporation's activities. It is the place that Courts of Appeals have called the
18                 corporation's "nerve center." And in practice it should normally be the place
                   where the corporation maintains its headquarters-provided that the
19                 headquarters is the actual center of direction, control, and coordination, i.e.,
                   the "nerve center,' and not simply an office where the corporation holds its
20                 board meetings (for example, attended by directors and officers who have
                   traveled there for the occasion).

21
22  *Id*. at 1192. Thus, a corporation may have dual citizenship. "A corporation is deemed to be

23  a citizen of both the State in which it is incorporated and of the State where it has its

24  principal place of business[.]" *Lacombe v. Bullhead City Hosp. Corp*., 2007 WL 2702005,

25  * 2 (D.Ariz., Sept. 12, 2007) (internal quotation marks omitted). To remain diverse for

26  purposes of diversity jurisdiction, neither the corporation's state of incorporation nor its

27  principal place of business can be the same as the citizenship of any of the opposing parties.

           "StreetSmarts is a very small software company, and does not have a

28

traditional office." (Docs. 23 at 13; doc. 23-1, Exh 2 at 7, ¶ 3) According to the testimony at the hearing and the record herein, StreetSmarts' principal place of business is the State of Illinois and its office is located in Batt's residence where he lives with his parents at 222 May Ave., Glen Ellyn, Illinois which is StreetSmarts' "nerve center." (*Id*.; doc. 1-1, Exh. B, at 5-9; Tr. at 66)  StreetSmarts is also a corporation organized and existing under the laws of the State of Delaware with a registered statutory agent in Delaware, United States Corporation Agents, Inc., located at 1521 Concord Pike # 301, Wilmington, DE 19803. (Doc. 1 at 2)  The Court concludes that StreetSmarts is a citizen of both Illinois and Delaware.[5]

In a prior ruling, the Court found that Defendant Batt was intentionally avoiding service of process and authorized substituted service under Illinois law. (Doc. 28) Plaintiff properly followed Illinois law and served the Summons and Complaint on the authorized statutory agent for StreetSmarts, in Delaware, and provided a copy of the process server's verified Return of Service to Batt by mailing, postage prepaid, a copy of proof of such service, together with a copy of the Summons and Complaint, to Batt at 17W710 Butterfield Rd. # 317, Oakbrook Terrace, Illinois and 222 May Ave., Glen Ellyn, Illinois, as well as mailing a copy of the Return of Service to StreetSmarts' statutory agent in Delaware. (Doc. 30)

The Court concludes that it has subject matter jurisdiction over this case

---

[5] The Complaint fails to affirmatively allege the state of incorporation *and* principal place of business of StreetSmarts. 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . . ."). The hearing testimony, however, unequivocally established that StreetSmarts' principal place of business is in Illinois. Plaintiff's defective citizenship allegations are hereby amended to conform to the evidence and cured by the April 21, 2011 hearing testimony pursuant to 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."). *Alfi v. Nordstrom, Inc*., 2010 WL 5093434, * 6 (S.D.Cal., Dec. 8, 2010) (citing *Blue Ridge Ins. Co. v. Stonewich*, 142 F.3d 1145, 1148 (9th Cir. 1998)).

1    pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 and

2    the parties are completely diverse.  Venue is also proper pursuant to 28 U.S.C. § 1391(a)(2)

3    because jurisdiction is founded on diversity of citizenship and a substantial part of the events

4    or omissions giving rise to Plaintiff's claims occurred in Arizona.

5    ### C. Personal jurisdiction

6    "The Due Process Clause of the Fourteenth Amendment operates to limit the

7    power of a State to assert in personam jurisdiction over a nonresident defendant."

8    *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984) (citation

9    omitted). If a court determines that a defendant's contacts with the forum state are sufficient

10   to satisfy the Due Process Clause, then the court may exercise either "general" or "specific"

11   jurisdiction over an out-of-state defendant. *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th

12   Cir. 2008); *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995).  Specific

13   jurisdiction exists when a suit arises out of, or is related to, the defendant's contacts with the

14   forum. *Helicopteros*, 466 U.S. at 414 n. 8. General jurisdiction refers to the authority of a

15   court to exercise jurisdiction even where the cause of action is unrelated to the defendant's

16   contacts with the forum. *Id*. at 414 n. 9. The nature of the defendant's contacts with the forum

17   state, therefore, will determine whether a court exercises general or specific jurisdiction over

18   the defendant. *Id*.

19   The Ninth Circuit employs a three-prong test to determine whether a district

20   court has specific jurisdiction over a defendant. *Menken v. Emm*, 503 F.3d 1050, 1057 (9th

21   Cir. 2007) (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir.

22   2004)).  First, "the non-resident defendant must purposefully direct his activities or

23   consummate some transaction with the forum or resident thereof; or perform some act by

24   which he purposefully avails himself of the privilege of conducting activities in the forum

25   . . . ." *Schwarzenegger*, 374 F.3d at 802. In a breach-of-contract action, the court "typically

26   inquire[s] whether a defendant 'purposefully avail[ed] itself of the privilege of conducting

27   activities' or 'consummate[s] [a] transaction' in the forum, focusing on activities such as

28   delivering goods or executing a contract." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et*

*L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (*en banc*). Second, "the claim must be one which arises out of or relates to the defendant's forum-related activities." *Schwarzenegger*, 374 F.3d at 802. Third, "the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable." *Id*. "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id*. If a plaintiff satisfies the first two burdens, "the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.; see also*, *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086-87 (9th Cir. 2000) (citing *Cybersell, Inc. v. Cybersell, Inc*., 130 F.3d 414, 417 (9th Cir. 1997)).

The Ninth Circuit also directs that seven factors be considered when determining whether exercising specific jurisdiction is reasonable: (1) the extent of defendant's purposeful interjection into the forum state, (2) the burden on defendant, (3) the conflicts of the law between the forum state and defendant's home jurisdiction, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995); *BCS & Associates Business Consulting Services, Inc. v. Essentia Health*, 2010 WL 1253186, * 5-6 (D.Ariz., March 25, 2010) (In balancing the *Terracom* factors, "this Court finds it reasonable to exercise specific jurisdiction over the non-resident Defendants. The extent of Defendants' purposeful interjection into Arizona, the minimal burden on Defendants, the lack of conflict with Defendants' home state, Arizona's interest in adjudicating the dispute and the Court's interest in efficiency weigh in favor of finding jurisdiction reasonable.").

The record before the Court sets forth facts sufficient to establish purposeful interjection in Arizona on the part of the defaulted Defendants. It is undisputed that Defendants StreetSmarts and Batt intentionally availed themselves of the privilege of conducting commercial activities in Arizona. According to the hearing testimony and the record herein, Batt telephoned Plaintiff in Arizona from Illinois in November, 2008, the first

1   contact Plaintiff ever had with Batt, at which time Batt offered Plaintiff employment with

2   StreetSmarts. (Tr. at 15, 24)  A few days later, on or about November 25, 2008 while

3   Plaintiff was at his residence in Arizona, Plaintiff received a written employment contract

4   from Batts, offering Plaintiff employment with StreetSmarts as its Vice President of

5   Operations. (Docs. 1 at 2; 1-1, Exh A at 2-3)  Like all StreetSmarts' employees, Plaintiff

6   would perform, and did perform, all his work for Defendants in and from his Phoenix

7   residence. (Doc. 23-1, Exh 2 at 7, ¶ 4) It is this work for which Plaintiff seeks full

8   compensation and damages in this lawsuit. Thus, Plaintiff's claims arise out of, and result

9   from, Defendants' activities in Arizona. StreetSmarts and Batt intentionally directed their

10  actions into Arizona in order to hire Plaintiff, purposefully sending emails, letters, and an

11  employment contract to Plaintiff, known by Defendants to be an Arizona resident.  Plaintiff

12  executed the employment contract in Arizona, and thereafter Plaintiff performed all his

13  services for StreetSmarts and Batt in and from Arizona from November 28, 2008 to August

14  4, 2010. (Doc. 1-1 at 1-13; Tr. at 15-17, 24, 34) Additionally, the effects of Defendants'

15  breach of the employment contract with Plaintiff occurred in Arizona, and the harm to

16  Plaintiff was naturally felt in Arizona. *Moser v. Encore Capital Group, Inc*., 2007 WL

17  1114097, * 4 (S.D.Cal., March 29, 2007) ("[S]pecific jurisdiction exists where defendants'

18  intentional and allegedly tortious actions outside the forum state were calculated to, and did,

19  have a substantial effect in the forum state.") (citing *Calder v. Jones*, 465 U.S. 783, 788-90

20  (1984)).

21          The Court finds that the first two prongs of the *Schwarzenegger* test have been

22  established: (1) StreetSmarts and Batt purposefully directed a substantial portion of its

23  activities in Arizona and consummated the transaction in Arizona; and (2) StreetSmarts and

24  Batt performed affirmative acts in Arizona by which they purposefully availed themselves

25  of the privilege of conducting activities in Arizona. *Renteria v. Ramanlal*, 2009 WL 73675,

26  * 2 (D.Ariz., Jan. 9, 2009) (citing, among others, *Decker Coal Co. v. Commonwealth Edison

27  Co.*, 805 F.2d 834, 840 (9th Cir. 1986) (stating "if the defendant directly solicits business in

28  the forum state, the resulting transactions will probably constitute the deliberate transaction

1   of business invoking the benefits of the forum state's laws.")).

2          The burden has shifted to StreetSmarts and Batt to demonstrate that the

3   District Court's exercise of specific personal jurisdiction over them in Arizona would be

4   contrary to fair play and substantial justice. *Hammond v. Monarch Investors, LLC*, 2010 WL

5   2674401, * 2 (S.D.Cal., July 10, 2010) ("If plaintiff succeeds in satisfying both prongs, the

6   burden shifts to the defendant to present a 'compelling case' that the exercise of jurisdiction

7   would not be reasonable.") (citing *Schwarzenegger*, 374 F.3d at 802). Defendants have not

8   met their burden in this regard. By contracting with Plaintiff for his extensive personal

9   services performed in Arizona for Defendants, StreetSmarts and Batt purposefully availed

10  themselves of the benefits of doing business in and from Arizona and could reasonably

11  expect to be haled into court in Arizona for failing to honor their promises to compensate

12  Plaintiff for his work performed in Arizona. *Harris Tursky & Co., Inc. v. Bell & Clements*

13  *Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003). The exercise of specific jurisdiction over

14  Defendants in the District of Arizona is fair, just and reasonable. *Schwarzenegger*, 374 F.3d

15  at 802 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)); *BCS &*

16  *Associates Business Consulting Services, Inc.*, 2010 WL 1253186 at * 3 ("When a defendant

17  enters into a contract that creates a continuing obligation to a resident of another state, the

18  defendant has purposely availed himself of the benefits and privileges of that state and should

19  reasonably expect to be hailed into court there.") (citing *Ballard v. Savage*, 65 F.3d 1495,

20  1498 (9th Cir. 1995)).

21  **III. Liability Causes of Action, Punitive Damages and Other Issues**

22          "[F]ederal courts sitting in diversity jurisdiction apply state substantive law

23  and federal procedural law." *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir.

24  2003). Arizona substantive law applies to this diversity action.

25          **A. Treble damages**

26          Count I of the Complaint alleges a cause of action for treble damages pursuant

27  to Arizona Revised Statute ("A.R.S.") § 23-355 due to Defendants' willful and wrongful

28  refusal to pay Plaintiff's wages. (Doc. 1 at  8-9)

1    In Arizona, an employer is required to pay wages due an employee within time

2    periods specified by A.R.S. § 23-353. Under the Arizona Wage Act, A.R.S. § 23-350 *et seq*.,

3    "if an employer fails to pay wages due any employee, 'such employee may recover in a civil

4    action against an employer or former employer an amount which is treble the amount of the

5    unpaid wages.'" *Gil v. JP Morgan Chase Bank, N.A.*, 2009 WL 1628876, * 8 (D.Ariz., Jun.

6    10, 2009) (quoting A.R.S. § 23-355). "The treble damage statute deters employers from

7    withholding or delaying payment of sums which employees have earned . . . and protects

8    employees from an employer's groundless refusal to pay compensation which was promised

9    and which was due 'in return for work performed.'" *Schade v. Diethrich*, 158 Ariz. 1, 12,

10   760 P.2d 1050, 1061 (Ariz. 1988).

11    Arizona Revised Statute § 23-352(3) removes the remedy of treble damages

12   when a good faith dispute regarding the amount of wages exists. *Dalos v. Novaheadinc*,

13   2008 WL 4182996, * 7 (Az.Ct.App., March 18, 2008) ("Here, Sweeney repeatedly

14   acknowledged that Dalos was owed wages but claimed that the company lacked the funds

15   to pay. As in *Sanborn*, its refusal to pay constituted bad faith."); *Abrams v. Horizon Corp*.,

16   137 Ariz. 73, 669 P.2d 51, 55 (Ariz. 1983).

17   **B. Fraud and fraudulent misrepresentation**

18    Count II of the Complaint alleges causes of action for fraud and fraudulent

19   misrepresentation. (Doc. 1 at 9-11)

20    Arizona requires a plaintiff to "prove the nine elements of fraud in order to

21   prevail." *Zuniga v. Cowie*, 2007 WL 5462169, * 3 (Az.Ct.App., Dec. 13, 2007). "The

22   elements for fraud or fraudulent misrepresentation are: (1) a representation, (2) its falsity, (3)

23   its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the

24   speaker's intent that the information should be acted upon by the hearer and in a manner

25   reasonably contemplated, (6) the hearer's reliance on its truth, (8) the hearer's right to rely

26   on it, and (9) the hearer's consequent and proximate injury. *Id*. (citing *Dillon v. Zeneca*

27   *Corp*., 202 Ariz. 167, 171-72, 42 P.3d 598, 602-03 (Az.Ct.App. 2002) (fraudulent

28   misrepresentation); *Enyart v. Transamerica Ins. Co.*, 195 Ariz. 71, 77, 985 P.2d 556, 562

(Az.Ct.App. 1998) (fraud). Moreover, each element must be proven by clear and convincing evidence. *Id.*; *Davis v. First Nat'l Bank of Arizona*, 124 Ariz. 458, 465, 605 P.2d 37, 44 (Az.Ct.App. 1979) (stating elements for fraudulent misrepresentation). If a claim lacks any of the preceding elements, it is not actionable. *Nielson v. Flashberg*, 101 Ariz. 335, 338, 419 P.2d 514, 517 (Ariz. 1966) ("We have held there is no actionable fraud without a concurrence of all the elements thereof.").

Generally, before a representation constitutes actionable fraud, "it must relate to either a past or existing fact. It cannot be predicated on unfulfilled promises, expressions of intention or statements concerning future events unless such were made with the present intention not to perform." *Staheli v. Kauffman*, 122 Ariz. 380, 384, 595 P.2d 172, 175 (Ariz. 1979); *Spudnuts, Inc. v. Lane*, 131 Ariz. 424, 641 P.2d 912, 914 (Az.Ct.App. 1982). The underlying policy is that "a promise to perform in the future is not a representation which can be shown to be true or false at the time it was made, and therefore, a person has no right to rely, in a legal sense, on a representation of a fact not in existence." *Denbo v. Badger*, 18 Ariz.App. 426, 428, 503 P.2d 384, 386 (Az.Ct.App. 1972). "[A] breach of contract is not fraud." *Trollope v. Koerner*, 106 Ariz. 10, 19, 470 P.2d 91, 100 (Ariz. 1970). "Unkept promises relating to future events are, at most, a breach of contract." *Moshir v. PatchLink Corp.*, 2007 WL 505344, * 5 (D.Ariz., Feb. 12, 2007) (quoting *Ahmed v. Collins*, 23 Ariz.App. 54, 56–57, 530 P.2d 900, 902–03 (Az.Ct.App. 1975)).

An established exception to Arizona's general rule is if a promise is "made without present intention to perform," "the misstatement of the present intention is regarded as a misrepresentation of fact" that will support a claim for fraud. *Id.*; *Employer's Liability Assur. Corp. v. Lunt*, 82 Ariz. 320, 313 P.2d 393 (Ariz. 1957) ("In this jurisdiction it is settled that a fraud may be perpetrated by the giving of a promise to perform a future act made with the present intention not to perform.") (citations omitted)."It also seems to be accepted that a buyer's nondisclosure of insolvency constitutes fraud where it is coupled with an intent not to pay . . . ." *Id.* (approving federal courts' finding "it is a fraud for an insolvent, concealing his condition, to buy goods, for which he does not mean to pay."). "[F]raudulent

1   intent must often be established by circumstantial evidence, and it may be 'inferred from
2   such circumstances as defendant's insolvency, his hasty repudiation of the promise, his
3   failure even to attempt performance, or his continued assurances after it was clear he would
4   not perform.'" *Hamilton v. Willms*, 2005 WL 3143712, * (E.D.Cal., Nov. 22, 2005) (*Tenzer*
5   *v. Superscope, Inc*., 39 Cal.3d 18, 30, 216 Cal.Rptr. 130, 702 P.2d 212 (1985)).

6   **C. Breach of contract**

7   Count III of the Complaint alleges a cause of action for breach of contract.
8   (Doc. 1 at 11-12)

9   Under Arizona law, "[a]n enforceable contract requires 'an offer, an
10   acceptance, consideration, and sufficient specification of terms so that obligations involved
11   can be ascertained.'" *Richard E. Lambert, Ltd. v. Houston Const. Co., Inc*., 2009 WL
12   2031920, 2 (Az.Ct.App., July 14, 2009) (quoting *K-Line Builders, Inc. v. First Fed. Sav. &*
13   *Loan Ass'n*, 139 Ariz. 209, 212, 677 P.2d 1317, 1320 (Az.Ct.App. 1983)). "[E]mployment
14   contracts universally imply, if they do not expressly state, that the employee will work where
15   directed and be paid after the service is performed. A promise for a promise is adequate legal
16   consideration to support a contract." *Knack v. Industrial Commission*, 108 Ariz. 545, 548,
17   503 P.2d 373, 376 (Ariz. 1972) (citation omitted). "The parties must intend to be bound."
18   *Tabler v. Indus. Comm'n of Ariz*., 202 Ariz. 518, 521, 47 P.3d1156, 1159 (Az.Ct.App. 2002).
19   "It is well established that, in an action based on breach of contract, the plaintiff has the
20   burden of proving the existence of a contract, breach of the contract, and resulting damages.
21   *Chartone, Inc. v. Bernini*, 207 Ariz. 162, 170, 83 P.3d 1103, 1111 (Az.Ct.App. 2004) (citing
22   *Thunderbird Metallurgical, Inc. v. Ariz. Testing Lab*., 5 Ariz.App. 48, 423 P.2d 124
23   (Az.Ct.App. 1967)).

24   "Generally, contact law enforces the expectancy interests between
25   contracting parties and provides redress for parties who fail to receive the benefit of their
26   bargain." *Carioca Co. v. Sult*, 2010 WL 2606623, * 4 (Az.Ct.App., June 29, 2010) (quoting
27   *Carstens v. City of Phoenix*, 206 Ariz. 123, 75 P.3d 1081, 1084 (Az.Ct.App. 2003), *rejected*
28   *on other grounds*, *Flagstaff Affordable Housing Ltd. P'ship v. Design Alliance, Inc*., 223

Ariz. 320, 223 P.3d 664 (Ariz. 2010). Damages, however, must be proven with "reasonable certainty." *Chartone*, 207 Ariz. at 170, 83 P.3d at 1111 (citing *Gilmore v. Cohen*, 95 Ariz. 34, 36, 386 P.2d 81, 82 (Ariz. 1963)); *see also* Restatement (Second) of Contracts § 352 (1981). "Although 'reasonable certainty' does not require 'certainty in amount,' 'the plaintiff's evidence [must] provide some basis for estimating his loss. [T]he evidence must make an 'approximately accurate estimate possible.'" *Walter v. Simmons*, 169 Ariz. 229, 237, 818 P.2d 214, 222 (Az.Ct.App. 1991) (citations omitted). "An award of damages cannot be based on conjecture or speculation[.]" *Id*.

### D. Breach of the covenant of good faith and fair dealing

Count IV of the Complaint alleges a cause of action for breach of the covenant of good faith and fair dealing. Count IV does not specify whether the allegation arises in tort or contract. (Doc. 1 at 12-13)

"Arizona law implies a covenant of good faith and fair dealings in every contract, which prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement." *Addvensky v. Dysart Unified School Dist. No. 89*, 2011 WL 1882289, * 7 (D.Ariz., May 17, 2011) (internal quotation marks omitted) (quoting *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 490, 38 P.3d 12, 28 (Ariz. 2002). "Action for breach of the covenant may sound in contract or in tort, but sustaining a tort claim requires a plaintiff to allege and prove a "special relationship between the parties arising from elements of the public interest, adhesion, of fiduciary responsibility.'" *Id*., If a plaintiff attempts to make a bad faith claim in tort, but does not allege and prove the necessary special relationship to support a claim for breach of the implied covenant in tort, the claim fails. *Id*.

### E. Piercing the corporate veil

Count V of the Complaint seeks to pierce StateStreets' corporate veil and impose liability on Batt personally. (Doc. 1 at 13-15)

The veil piercing doctrine is not a cause of action in itself; but rather, it is a means to vindicate the interests of parties injured through a breach of contract or a tort. *In*

*re Elegant Custom Homes, Inc*., 2007 WL 1412456, * 5 (D.Ariz., May 14, 2007) (citing *International Financial Services Corp. v. Chromas Technologies Canada, Inc*., 356 F.3d 731, 735-36 (7th Cir. 2004) ("Piercing the corporate veil, after all, is not itself an action; it is merely a procedural means of allowing liability on a substantive claim, here breach of contract.") and *Gallagher v. Bintliff*, 740 S.W.2d 118, 119 (Tex.App. 1987) ("An attempt to pierce the corporate veil, in and of itself, is not a cause of action but rather is a means of imposing liability on an underlying cause of action such as a tort or breach of contract."). In diversity cases, federal courts look to state law to determine whether a corporation should be treated as the alter-ego of a person or another entity. *Hambleton Bros. Lumber Co. v. Balkin Enters*., 397 F.3d 1217, 1227 (9th Cir. 2005) (noting that in diversity actions, federal courts must apply state law when evaluating alter-ego status); *Davis v. Metro Prod., Inc*., 885 F.2d 515, 520-21 (9th Cir. 1989).

"As a general rule, a corporation will be treated as a legal entity until sufficient reason appears to disregard the corporate form." *Dietel v. Day*, 16 Ariz.App. 206, 492 P.2d 455 (Az.Ct.App. 1972). A corporation is an entity unto itself quite separate from its owners and officers and its "corporate status will not be lightly disregarded." *Chapman v. Field*, 124 Ariz. 100, 102, 602 P.2d 481, 483 (Ariz. 1979). The corporate form, however, "will be disregarded when the corporation is the alter ego of one or more individuals and 'the observance of the corporate form would sanction a fraud or promote injustice.'" *In re Elegant Custom Homes, Inc*., 2007 WL 1412456, at * 4 (quoting *Employer's Liability Assurance Corporation v. Lunt*, 313 P.2d 393, 395 (Ariz. 1957) ("The corporate fiction will, however, be disregarded upon the concurrence of two circumstances; that is, when the corporation is, in fact, the alter ego of one or a few individuals and when the observance of the corporate form would sanction a fraud or promote injustice."). A sufficient showing of either fraud or injustice may suffice to disregard the corporate form once the alter ego showing has been made. *Gatecliff v. Great Republic Life Ins. Co.*, 170 Ariz. 34, 37, 821 P.2d 725, 728 (Ariz. 1991). "Under *Gatecliff*, injustice may suffice to disregard the corporate form once the alter ego showing has been made." *In re Elegant Custom Homes, Inc*., 2007 WL 1412456, * 4.

To pierce the corporate veil or demonstrate alter-ego status, a "plaintiff[]must prove both (1) unity of control and (2) that observance of the corporate form would sanction a fraud or promote injustice." *Gatecliff*, 170 Ariz. at 37, 821 P.2d at 728.

Alter ego claims in Arizona may arise out of contract. *See, e.g., Dietel*, 492 P.2d at 457 (Plaintiff "filed a third-party complaint against Dietel, as the alter ego of Filmlab, Inc., for breach of contract."). "Although corporate directors and officers may not be held liable for a corporation's intentional torts merely by virtue of the office they hold, they may be held liable for such torts if they have involvement in the tortious acts." *Sports Imaging of Arizona, L.L.C. v.1993 CKC Trust*, 2008 WL 4448063, * 12 (Az.Ct.App., Sept. 30, 2008) (citations omitted). "[A] director or officer of a corporation does not incur personal liability for the corporation's torts merely by reason of his or her official character, but a director or officer who commits a tort, directs the tortious act to be done, or participates or cooperates therein, is liable to third persons injured thereby, even though liability may also attach to the corporation for the tort." *Id*. (citing *Charles Bloom & Co. v. Echo Jewelers*, 279 N.J.Super. 372, 652 A.2d 1238, 1243 (N.J.Super.Ct.App.Div.1995)). Arizona law, however, limits a veil-piercing action to only third parties who deal with a corporation. *Jones v. Teilborg*, 727 P.2d 18, 25 (Az.Ct.App. 1986) (denying corporate shareholders the right to pierce a corporate veil to obtain payments from other shareholders).

**F. Negligent misrepresentation**

Count VI of the Complaint alleges a cause of action for negligent misrepresentation. (Doc. 1 at 15-19)

Arizona recognizes the tort of negligent misrepresentation. *Van Buren v. Pima Community College District Bd.*, 113 Ariz. 85, 546 P.2d 821 (Ariz. 1976). "A claim for relief for negligent misrepresentation is one governed by the principles of the law of negligence. Thus, there must be 'a duty owed and a breach of that duty before one may be charged with the negligent violation of that duty.'" *Id*. (quoting *West v. Soto*, 85 Ariz. 255, 336 P.2d 153 (1959)). "A negligent misrepresentation claim cannot stand on promises of future conduct and, unlike fraud, cannot even stand on a 'promise made without present

intention to perform.'" *Frank Lloyd Wright Foundation v. Kroeter*, 697 F.Supp.2d 1118, 1130 (D.Ariz. 2010) (quoting Moshir, 2007 WL 505344 at * 7). "Because the alleged promise made by [defendant's chairman] that the [defendant] would honor its contractual commitments is clearly a promise of future conduct, the Court will grant the motion to dismiss the negligent misrepresentation claim." *Frank Lloyd Wright Foundation v. Kroeter*, 2008 WL 5111092, * 3 (D.Ariz., Dec. 3, 2008).

### G. Unjust enrichment

Count VII of the Complaint alleges a cause of action for unjust enrichment. (Doc. 1 at 16-19)

The doctrine of unjust enrichment is a "flexible, equitable remedy available whenever the court finds that 'the defendant . . . is obliged by the ties of natural justice and equity' to make compensation for the benefits received." *Arnold & Assocs., Inc. v. Misys Healthcare Systems*, 275 F.Supp.2d 1013, 1024 (D. Ariz. 2003) (quoting *Murdock-Bryant Const., Inc. v. Pearson*, 146 Ariz. 48, 53, 703 P.2d 1197, 1202 (Ariz.1985)).

"In Arizona, five elements must be proved to make a case of unjust enrichment: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) absence of justification for the enrichment and the impoverishment; and (5) an absence of a remedy provided by law." *Community Guardian Bank v. Hamlin*, 182 Ariz. 627, 630 898 P.2d 1005, 1008 (Az.Ct.App. 1995). "Where 'there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application.'" *McNutt v. Key Financial Corp.*, 2010 WL 3702509, * 2 (D.Ariz., Sept. 9, 2010) (quoting *Brooks v. Valley Nat'l Bank*, 113 Ariz. 169, 174, 548 P.2d 1166, 1171 (Ariz. 1976)). A plaintiff is permitted to plead an unjust enrichment claim in the alternative to a breach of contract claim. *Id.* (*Johnson v. KB Home*, 2010 WL 1268144, * 10 (D.Ariz., March 30, 2010)).

### H. Punitive damages

Plaintiff seeks an award of punitive damages "against Defendants in order to deter similar action against others[.]" (Doc. 1 at 17)

Punitive damages, of course, may not be awarded in Arizona for a mere breach of contract. *Continental National Bank v. Evans*, 107 Ariz. 378, 382, 489 P.2d 15, 19 (Ariz. 1971) ("[T]he authorities are generally in accord that punitive damages cannot be awarded for . . . a breach of contract."); *In re Marriage of Benge*, 151 Ariz. 219, 224, 726 P.2d 1088, 1093 (Az.Ct.App. 1986) (explaining that "punitive damages may not ordinarily be assessed in contract actions" but that they "may be recoverable where the breach of contract constitutes a tort"); *Lerner v. Brettschneider*, 123 Ariz. 152, 156, 598 P.2d 515, 519 (Az.Ct.App. 1979) ("[A]lthough punitive damages do not lie for breach of contract, they are recoverable where the breach of contract constitutes a tort.").

In Arizona, "[p]unitive damages are awarded only in the most egregious of cases, where [a plaintiff proves by clear and convincing evidence that the defendant engaged in] reprehensible conduct and acted with an evil mind." *Medasys Acquisition Corp. v. SDMS, P.C.*, 203 Ariz. 420, 424, 55 P.3d 763, 767 (Ariz. 2002) (internal quotation marks omitted) (quoting *Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 331-332, 723 P.2d 675, 680-681 (Ariz. 1986)). "For that reason, punitive damages should rarely be awarded. In those cases in which they are appropriate, punitive damages should be available to deter egregious conduct." *Id*.

To obtain punitive damages in Arizona, a plaintiff must prove that defendant's evil hand was guided by an evil mind. *Rawlings v. Apodaca*, 151 Ariz. 149, 162, 726 P.2d 565, 578 (Ariz. 1986). It is the "evil mind" that distinguishes action justifying the imposition of punitive damages. *Linthicum*, 150 Ariz. 326, 331, 723 P.2d 675, 680 (Ariz. 1986). "Punitive damages may not be awarded absent a showing of 'something more' than mere tortious conduct." *Piper v. Bear Med. Sys., Inc*., 180 Ariz. 170, 183, 883 P.2d 407, 417 (Az.Ct.App. 1993) (quoting *Linthicum*, 150 Ariz. at 330, 723 P.2d at 679). "The requisite 'something more,' or 'evil mind,' is established by evidence that defendant either (1) 'intended to injure the plaintiff . . . [or (2)] consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others.'" *Gurule v. Illinois Mut. Life & Cas. Co.*, 152 Ariz. 600, 602, 734 P.2d 85, 87 (Ariz. 1987) (quoting *Rawlings*, 151 Ariz.

at 162, 726 P.2d at 578). "A defendant acts with the requisite evil mind when he intends to injure or defraud, or deliberately interferes with the rights of others, 'consciously disregarding the unjustifiable substantial risk of significant harm to them.'" *Hyatt Regency Phoenix Hotel Co. v. Winston & Strawn*, 184 Ariz. 120, 133, 907 P.2d 506, 518 (Az.Ct.App. 1995) (quoting *Linthicum*, 150 Ariz. at 531, 723 P.2d at 680).

While the necessary evil mind may be inferred, it is still this evil mind in addition to outwardly aggravated, outrageous, malicious, or fraudulent conduct which is required for punitive damages. *Linthicum*, 150 Ariz. at 331, 723 P.2d at 680. The quality of the defendant's conduct is relevant only because it provides one form of evidence from which the defendant's motives may be inferred. *Gurule*, 152 Ariz. at 602, 734 P.2d at 87. The more outrageous or egregious the conduct, the more compelling the inference of an evil mind. *Id.* Nevertheless, the inquiry in every punitive damages case focuses on the defendant's state of mind, which may be established by either direct or circumstantial evidence. *Id.*

"[W]hen supported by clear and convincing evidence, a finding by the jury that a defendant has committed actual fraud is often, though not always, sufficient to support the recovery of punitive damages. *Rowe v. Bankers Life and Cas. Co.*, 2008 WL 5156077, * 9 (D.Ariz., Dec. 9, 2008) (citing *Farr v. Occidental Life Ins. Co.*, 145 Ariz. 1, 699 P.2d 376, 383 (Az.Ct.App. 1984) ("noting that '[f]raud will suffice' to award punitive damages"); but see *Echols v. Beauty Built Homes*, 132 Ariz. 498, 647 P.2d 629, 632 (Ariz. 1982) ("It does not follow that every case of fraud will support punitive damages."). Thus, in Arizona, "punitive damages are not recoverable in every fraud case, even though fraud is an intentional tort." *Surowiec v. Capital Title Agency, Inc*., 2011 WL 1671925, * (D.Ariz., May 4, 2011) (citing *Rawlings*, 726 P.2d at 578 n. 8; *Dawson v. Withycombe*, 216 Ariz. 84, 163 P.3d 1034, 1062 & n. 27 (Az.Ct.App. 2007)).

**I. Attorney's Fees**

Plaintiff seeks an award of "reasonable attorney's fees" against Defendants. (Doc. 1 at 17)

1             In Arizona, attorneys' fees may be awarded only when provided for by

2    agreement or statute. *Chavarria v. State Farm Mut. Auto. Ins. Co.*, 165 Ariz. 334, 337, 798

3    P.2d 1343, 1346 (Az.Ct.App. 1990). Pursuant to A.R.S. § 12-341.01(A) (2010), a court may

4    award a prevailing party reasonable attorneys' fees in "any *contested* action arising out of a

5    contract." A.R.S § 12-341.01 (emphasis added). In *Morrison v. Shanwick*, 167 Ariz. 39, 46,

6    804 P.2d 768, 775 (Az.Ct.App. 1990), the Arizona Court of Appeals defined a "contested

7    action" within the context of A.R.S. § 12-341.01(A):

8            We believe a contested action is one in which the defendant has appeared and
     generally defends against the claims and demands made by the plaintiff.

9            Conversely, an action is not contested, or "uncontested," simply because the
     defendant admits in his answer the true facts of the case.

10   804 P.2d at 775. Other Arizona federal judges have recognized *Morrison* as determinative

11   of Arizona law, declining an award of attorneys' fees incurred in obtaining an uncontested,

12   default judgment. *BRT Funding, LLC v. Carlsbad Development I, LLC*, 2009 WL 2486008,

13   * 3 (D.Ariz., August 12, 2009) ("[a]ttorneys fees are not recoverable under A.R.S. §

14   12-341.01(A) because this was not a contested action[,]" citing *Morrison*); *Lewis v. Smith*,

15   2009 WL 2106287 * 1 (D.Ariz., July 16, 2009); *BBQ Hut, Inc. v. Maelin Enterprises, LLC*,

16   2008 WL 2687685, at * 2 (D.Ariz., July 3, 2008) ("Because defendants appeared and, at least

17   initially, denied the allegations of the complaint, this was a 'contested action[,]'" citing

18   *Morrison*).

19   ### J. Interest and Costs

20            In federal diversity actions, Arizona law generally determines the rate of

21   prejudgment interest but post-judgment interest is governed by federal law. 28 U.S.C. §

22   1961; *Citicorp Real Estate v. Smith*, 155 F.3d 1097, 1107-08 (9th Cir. 1998). As to post-

23   judgment interest, Plaintiff is entitled to post-judgment interest at the federal rate pursuant

24   to 28 U.S.C. § 1961, to be calculated by the Clerk of the Court from the date of the entry of

25   judgment.[6]

26

27         [6] Per 28 U.S.C. § 1961(a), post-judgment interest is calculated "from the date of the

28   entry of the judgment, at a rate equal to the weekly average 1-year constant maturity

1        Under A.R.S. § 44-1201(A), "[i]nterest on any loan, indebtedness, *judgment*

2   or other obligation shall be at the rate of ten  percent per annum, unless a different rate is

3   contracted for in writing . . . ."  which sets the pre-judgment and post-judgment interest rate

4   at ten percent simple interest per annum. A.R.S. § 44-1201(A) (emphasis added); *Collins v.*

5   *D.R. Horton, Inc*., 361 F.Supp.2d 1085, 1094 (D. Ariz. 2005), *affirmed by*, 505 F.3d 874 (9th

6   Cir. 2007). Under Arizona law, "'prejudgment interest on a liquidated claim is a matter of

7   right.'" *AMHS Ins. Co. v. Mut. Ins. Co. of Ariz*., 258 F.3d 1090, 1103 (9th Cir. 2001)

8   (quoting *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 508, 917 P.2d 222, 237 (Ariz. 1996)

9   (*en banc*)); *Precision Heavy Haul, Inc. v. Trail King Industries, Inc*., ___ P.3d. ___, 580

10  Ariz. Adv. Rep. 8 (Az.Ct.App. 2010). Arizona authorizes pre-judgment interest on a "debt

11  prior to judgment provided the sum demanded is 'liquidated,'" *Homes & Son Constr. Co.*

12  *Inc. v. Bolo Corp*., 22 Ariz.App. 303, 306, 526 P.2d 1258, 1261 (Az.Ct.App. 1974), and

13  "[i]nterest should be calculated from the date the sums became due." *L. M. White*

14  *Contracting Co. v. St. Joseph Structural Steel Co.*, 15 Ariz.App. 260, 265, 488 P.2d 196, 201

15  (Az.Ct.App. 1971). A claim is liquidated for purposes of pre-judgment interest "if the

16  evidence furnishes data which, if believed, makes it possible to compute the amount with

17  exactness, without reliance upon opinion or discretion." *Arizona Title Insurance & T. Co. v.*

18  *O'Malley Lbr. Co.*, 14 Ariz.App. 486, 496, 484 P.2d 639, 649 (Az.Ct.App. 1971); *Scottsdale*

19  *Memorial Health Systems, Inc. v. Maricopa County*, 2010 WL 1255719, * 16 (Az.Ct.App.,

20  March 30, 2010) ("All that is necessary is that the evidence furnish data which, if believed,

21  makes it possible to compute the amount with exactness.") (citation omitted). Prejudgment

22  interest may be awarded by default judgment only if demanded in the complaint. *Wolters v.*

23  *Elwess*, 2005 WL 2002437, * (Az.Super.Ct., April 25, 2005); *Silge v. Merz*, 510 F.3d 157,

24  159-162 (2nd Cir. 2007). Plaintiff requested an award of pre-judgment and post-judgment

25  interest in the Complaint. (Doc. 1 at 17)

26

27  Treasury yield, as published by the Board of Governors of the Federal Reserve System, for
    the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a) (footnote

28  omitted).

1    The costs of litigation other than attorney's fees are grouped as non-taxable

2    and taxable. Non-taxable costs are not recoverable under A.R.S. § 12-341.01; *Ahwatukee*

3    *Custom Estates Mgmt. Ass'n, Inc. v. Bach*, 193 Ariz. 401, 402-404, 973 P.2d 106, 107-109

4    (Ariz. 1999). Additionally, the parties' contract does not address whether the prevailing party

5    is entitled to recover his or its non-taxable expenses and costs. *Schritter v. State Farm Mut.*

6    *Auto. Ins. Co.*, 201 Ariz. 391, 394, n. 5, 36 P.3d 739, 742, n. 5 (Ariz. 2001) ("[u]nder section

7    12-332.A.6, the parties may agree to share [otherwise non-taxable] costs or impose them on

8    the losing party."). Except for taxable costs as discussed later herein, Plaintiff is not entitled

9    to recover non-taxable costs, such as, the cost of photocopying, delivery charges, local or

10   long distance calls, messenger services, unidentified professional services and other itemized

11   miscellaneous expenses. *CenTrust Mortgage Corp. v. PMI Mortgage Ins. Co.*, 166 Ariz. 50,

12   800 P.2d 37, 45-46 (Az.Ct.App. 1990). Ordinarily, the prevailing party in a contested action

13   arising out of contract would be entitled to recoup his costs of computerized legal research.

14   *Ahwatukee Custom Estates Mgmt. Ass'n*, 973 P.2d at 108-09 ("[a]ttorneys' fees awards can

15   include the cost of computerized legal research."). Because recovery of computerized legal

16   research fees is derivative of an award of  attorneys' fees, which will be denied in this case,

17   the Court will also deny Plaintiff's request for recovery of any computerized legal research

18   fees.

19   Federal law governs Plaintiff's award of taxable costs. *Aceves v. Allstate Ins.*

20   *Co.*, 68 F.3d 1160, 1167 (9th Cir. 1995). Plaintiff may recover his taxable costs with strict

21   compliance with Fed.R.Civ.P. 54(d)(1), LRCiv 54.1(a) and 28 U.S.C. § 1920.

22   **IV. Default Judgments**

23   Following the entry of default, Rule 55(b)(2), Fed.R.Civ.P., permits a district

24   court to enter final judgment in a case.  Entry of default judgment, however, is not a matter

25   of right. "Its entry is entirely within the court's discretion and may be refused where the court

26   determines no justifiable claim has been alleged or that a default judgment is inappropriate

27   for other reasons." *Eason v. Indymac Bank, FSB*, 2010 WL 1962309, * 1 (D.Ariz., May 14,

28   2010) (citing *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986) and *Aldabe v. Aldabe*,

616 F.2d 1089, 1092 (9th Cir. 1980)). "[A]ll well-pleaded facts in the complaint are taken as true, except those relating to damages." *Black & Decker (U.S.), Inc. v. All Spares, Inc*., 2010 WL 3034887, 2 (D.Ariz., Aug. 3, 2010) (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987)); *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977).

In determining damages, a district court can rely on the declarations submitted by the plaintiff or conduct a full evidentiary hearing, Fed. R. Civ. P. 55(b)(2), and "can award only up to the amount prayed for by a plaintiff in its complaint." *Black & Decker*, 2010 WL 3034887 at 3 (citing *Truong Giang Corp. v. Twinstar Tea Corp*., 2007 WL 1545173, at * 13 (N.D.Cal. 2007)). "[P]laintiff's burden in 'proving up' damages on a motion for default judgment is relatively lenient. If proximate cause is properly alleged in the complaint, it is admitted upon default. Injury is established and plaintiff need prove only that the compensation sought relates to the damages that naturally flow from the injuries pled." *Id*. (citing *Philip Morris USA, Inc. v. Castworld Products, Inc*., 219 F.R.D. 494, 498 (C.D.Cal., 2003) (citations omitted). "Entry of default judgment is not mandatory upon Plaintiff's request, and the court has discretion to require some proof of the facts that must be established in order to determine liability." *Martino v. Chapman*, 2008 WL 110948, * 1 (D.Ariz., Jan. 8, 2008) (quoting *Apple Computer Inc. v. Micro Team*, 2000 WL 1897354, at *3 n. 5 (N.D.Cal. 2000) (citing 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2688 (3rd ed. 1998)). Fundamental fairness, required by due process of law, limits the scope of relief, which is, undoubtedly, why Rule 54(c), Fed.R.Civ.P., proscribes that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." *Freemyer v. Kyrene Village II, LLC*, 2011 WL 42681, * (D.Ariz., Jan. 6, 2011) (citing *Philip Morris USA*, 219 F.R.D. at 498 and quoting Rule 54(c), Fed.R.Civ.P.).

Courts in the Ninth Circuit have held that "doubts about the actual assessment of damages [awarded at a default hearing] will be resolved against the party who frustrates proof of such, and the factfinder may calculate damages at the highest reasonably

ascertainable value." *Taylor Made Golf Co., Inc. v. Carsten Sports, Ltd.*, 175 F.R.D. 658, 663 (S.D.Cal. 1997) (quoting *Nintendo v. Ketchum*, 830 F.Supp. 1443, 1445-1446, (M.D.Fla. 1993) (cited with approval on other grounds in *Nintendo v. Dragon Pacific International*, 40 F.3d 1007 (9th Cir. 1994)).

The Ninth Circuit has enumerated seven factors for a district court to consider in determining whether to grant a default judgment: (1) the merits of the plaintiff's substantive claim; (2) the sufficiency of the complaint; (3) the sum of money at stake in the action; (4) the possibility of prejudice to the plaintiff; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring a decision on the merits. *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986); *Truong Giany Corp. v. Twinstar Tea Corp.*, 2007 WL 1545173 (N.D. Cal. 2007). After considering and balancing all these factors, the undersigned Magistrate Judge finds that they weigh strongly in favor of entering the default judgment recommended herein.

Because the Complaint seeks non-liquidated, non-specific damages in excess of $75,000.00, and not "a sum certain or a sum that [could] be made certain by computation" within the meaning of Rule 55(b), Fed.R.Civ.P., the Court conducted an on-the-record Rule 55(b)(2) default damages hearing on April 21, 2011.

**V. Findings of Fact**[7]

1. Defendant StreetSmarts, Inc. is a Delaware corporation with its principal place of business in the State of Illinois.  (Doc. 1-1, Exh. B, at 5-9; Tr. at 66) At all times material herein, its office was located in Defendant Dave Batt's residence where he lives with his parents at 222 May Ave., Glen Ellyn, Illinois which is StreetSmarts' nerve center and principal place of business.  (*Id.*)

2. StreetSmarts is also a corporation organized and existing under the laws of the State of Delaware with a registered statutory agent in Delaware, United States

---

[7] The findings of fact may also be a mixture of facts and law.

1  Corporation Agents, Inc., located at 1521 Concord Pike # 301, Wilmington, DE 19803. (Doc.
2  1 at 1-2, ¶¶ 2-3)

3       3. StreetSmarts is a citizen of both Illinois and Delaware.

4       4. At all times material herein, Defendant Dave Batt was a resident of Cook
5  County, Illinois, the President, and Chief Executive Officer of Defendant StreetSmarts, Inc.
6  (Doc. 1 at 2, ¶ 4; Tr. 65-66)

7       5. At all times material herein, Plaintiff was a resident of Phoenix, Maricopa
8  County, Arizona. (Doc. 1 at 1, ¶ 1; Tr. 14-15)

9       6. At all times material herein, Defendant Batt was not in military service and
10 was neither an infant nor an incompetent person. (Tr. 25)

11      7. Defendants StreetSmarts and Batt purposefully directed their activities to
12 Plaintiff in Arizona; hired, consummated their contract with, and communicated to Plaintiff
13 in Arizona; benefitted and profited from Plaintiff's services performed by Plaintiff entirely
14 in Arizona; and intentionally availed themselves of the privilege of conducting Defendants'
15 business activities in and from Arizona to warrant Arizona exercising specific personal
16 jurisdiction over Defendants StreetSmarts and Batt. (Doc. 1 at 2, ¶¶ 5-6)

17      8. Plaintiff's claims directly arise out of, and relate to, StreetSmarts' and Batt's
18 forum-related activities. (Doc. 1 at 2; ¶ 5)

19      9. It is fair and reasonable to exercise specific jurisdiction over Defendants
20 StreetSmarts and Batt in Arizona.

21      10. Defendants StreetSmarts and Batt were properly served with process under
22 federal and Illinois procedural law, respectively.

23      11. Defendants StreetSmarts and Batt mailed a written employment contract
24 to Plaintiff at his residence in Phoenix, Arizona. On or about November 25, 2008, Plaintiff
25 signed and accepted an employment contract to be StreetSmarts' Vice President of
26 Operations, in return for an annual salary of $115,000.00 plus benefits. (Tr. 16-20; doc. 1-1,
27 Exh A at 2-3) Plaintiff was employed by Defendants in Arizona, and Defendants intended
28 that the employment take place in Arizona. (Doc. 1 at 3, ¶ 11)

12. The contract provides, in relevant part, that Plaintiff's annual compensation will be:

> $115,000 of which $75,000 is salary and $40,000 is deferred and dependent upon the company securing additional working capital. [Plaintiff's] salary will be paid twice monthly . . . in the gross amount (before taxes and deductions) of $3,125. The deferred component of your cash compensation is accrued quarterly and will be paid contingent upon the company securing additional working capital in the form of angel investment, a meaningful line of credit, meaningful new customer revenue, or a Series A round of financing.

(*Id.* at 3-4, ¶ 13)

13. The contract required StreetSmarts to pay Plaintiff the $40,000 "deferred component of [his] cash compensation . . . upon the company securing additional working capital in the form of angel investment, a meaningful line of credit, meaningful new customer revenue, or a Series A round of financing." (*Id.*)

14. StreetSmarts did, in fact, "secur[e] additional working capital in the form of. . . meaningful new customer revenue" in the first and second quarters of 2010, but Batt failed to pay Plaintiff as required under the contract. (Doc. 25 at p. 4, ¶ 18, verified at Tr. 17-20, 22-23, Exh 1)

15. Beginning the pay period ending August 31, 2009, Defendants started underpaying Plaintiff by making only partial payments of his salary. (Doc. 1-1, Exh D at 13) On December 15, 2009, Defendants stopped paying Plaintiff entirely. (*Id.*, Tr. at 20-21, 39) Defendant Batt repeatedly reassured Plaintiff that he would be paid in full. (Doc. 1 at 4-5, ¶¶ 18-21) Batt informed Plaintiff that Defendants were just experiencing "a small glitch," there was nothing to worry about, that the delays were simple misunderstandings, miscommunications, and StreetSmarts was not having any financial difficulties. (*Id.* at ¶ 18)

16. From December 2009 to August 4, 2010, Batt repeatedly promised Plaintiff that StreetSmarts would be receiving additional investment capital and payments from customers, and that Plaintiff would be made whole from those funds. (Tr. at 39-42) In fact, Batt promised Plaintiff that Batt would accept personal responsibility for paying all Plaintiff's unpaid salary and benefits that Plaintiff was owed. (Doc. 1 at 5, ¶ 20) While

1   Plaintiff made repeated complaints to Batt about not being paid and demanded to be paid as

2   promised, Batt assured Plaintiff with promises and representations of forthcoming payment,

3   such that Plaintiff continued working and providing services in reliance upon Batt's

4   assurances, promises and representations. (*Id.*, ¶ 21)

5        17. Batt knew since, at least, October, 2009, that StreetSmarts was insolvent

6   or in significant financial trouble because on or around October 29, 2009, the Arizona

7   Department of Revenue made a demand on StreetSmarts for payment of its employees

8   unpaid withholding taxes. (Doc. 1 at 6, ¶ 26)

9        18. Defendant Batt specifically stated he was offended by the implication that

10  StreetSmarts would fail to pay wages, despite the fact that when StreetSmarts was previously

11  known as Involve Technology, Inc, it had repeated problems paying its employees. (Doc. 1

12  at 4-5, ¶ 19)

13       19. In reliance upon Batt's representations and promises that Plaintiff would

14  be paid in full, Plaintiff continued working for StreetSmarts and Batt forgoing other

15  employment opportunities. (Doc. 43 at 3, ¶ 14, verified at Tr. at 18-20)

16       20. During the entire time Plaintiff worked for StreetSmarts, from November

17  26, 2008 to August 5, 2010, his job performance was always acceptable. (*Id.*, ¶ 9, verified

18  at Tr. at 18-20)

19       21. In June 2010, StreetSmarts received substantial payments from its

20  customers as a direct result of Plaintiff's continued work to implement changes to the

21  programming, but contrary to Batt's promises, Batt did not use that money to pay Plaintiff's

22  unpaid salary and other benefits. (Doc. 1 at 6, ¶ 28) Instead, when Plaintiff complained to

23  Batt about the non-payment, Batt promised Plaintiff a double salary payment for the June

24  28, 2010 payroll period. (Doc. 1 at 6, ¶ 30; Tr. at 20-21)  Plaintiff did not receive a double

25  payment in the June 28, 2010 payroll as Batt had promised. (Doc. 1 at 6, ¶ 31)

26       22. In June and July of 2010, StreetSmarts received several large payments

27  from customers but, again, instead of paying Plaintiff as Batt had promised, Batt spent the

28  funds on other items, such as, Batt's personal lawyers representing Batt in a child custody

dispute with his ex-wife. (Doc. 1 at 6-7, ¶ 32; Tr. at 68-69)

23. Sometime in June 2010, StreetSmarts' request for interim financing was denied and Batt provided Plaintiff no specifics as to why. In fact, Plaintiff was not informed that the interim financing was denied, and Plaintiff continued working for StreetSmarts with the expectation that he would be paid as Batt promised. (Doc. 1 at 7, ¶ 33)

24. In July 2010, after Batt had spent all the incoming customer payments on items other than payroll, Plaintiff was informed that StreetSmarts did not have any money to pay Plaintiff's backpay or fund StreetSmarts' payroll going forward. On July 21, 2010, Plaintiff's direct supervisor, Lisa, sent out an email, stating that she was attempting to obtain approval to lay-off all of StreetSmarts' employees. (*Id.* at 7, ¶¶ 34-35)

25. On August 5, 2010, Batt sent Plaintiff an email with a letter attached, dated August 4, 2010, claiming Plaintiff was laid-off "retroactively" to July 21, 2010, confirming Defendants' indebtedness to Plaintiff, and, again, promising payment in the future, i.e.,"[w]hen the company closes on funding, you will be reimbursed all unpaid earnings and approved expenses." (*Id.* at 7, ¶ 37; doc. 1-1, Exh C, at 11) By this time, however, Plaintiff had experienced too many false promises so Plaintiff voluntarily terminated his employment with StreetSmarts on August 4, 2010. (Tr. at 34)

26. With Batt's knowledge, Plaintiff continued to actively perform his work for StreetSmarts while waiting for Batt to approve the lay-off of all StreetSmarts' employees. (Doc. at 7, ¶ 36; doc. 1-1, Exh C, at 11)

27. Defendants StreetSmarts and Batt breached the employment contract with Plaintiff, entitling Plaintiff to  recover contractual and other damages as alleged in Count III of the Complaint. (Doc. 1 at 11-12)

28. When Plaintiff terminated his employment with StreetSmarts on August 4, 2010, Defendants owed Plaintiff $54,826.52 in unpaid salary, which is itemized in Exhibit D to Plaintiff's Complaint. (Doc. 1-1, Exh D, at 13; Tr. at 21-22, 34-35)  Treble damages of the $54,826.52 amounts to $164,479.56. (Tr. 28, 30-32; doc. 1-1, Exh D)

29. At all times material herein, Plaintiff was an "employee" of Defendants

1   and his salary and deferred compensation constitutes "wages" within the meaning of A.R.S.

2   § 23-350(2),(5). *Schade*, 158 Ariz. at 11, 760 P.2d at 1060; A.R.S. § 23-350(2),(5).

3        30. There was no good faith dispute between the parties regarding the amount

4   of wages due Plaintiff.

5        31. Plaintiff is entitled to an award of treble damages of the $54,826.52 in

6   unpaid salary which amounts to $164,479.56, jointly and severally, against Defendants.

7   ($54,826.52 x 3 =  $164,479.56) (Docs. 23 at 14; 1-1, Exh D, at 13; Tr. at 34-35)  This

8   amount of money was reasonably proven by Plaintiff at the default damages hearing.

9        32. Defendant StreetSmarts is the "alter ego" of Defendant Batt. There is such

10   a unity of interest and ownership of Defendant StreetSmarts by Batt that the separate

11   personalities of StreetSmarts and Batt ceased to exist.

12        33. At all material times herein, Defendant Batt had complete control of

13   the Defendant StreetSmarts. Batt had ultimate authority over Defendant StreetSmarts as he

14   regularly exercised complete control over all aspects of the day-to-day operation, payroll,

15   and management of StreetSmarts, including how StreetSmarts' money was spent.

16        34. Defendants StreetSmarts and Batt failed to comply with corporate

17   formalities. For example, Batt never conducted formal meetings of StreetSmarts'

18   shareholders or its board of directors. (Tr. at 65-68)  StreetSmarts did not have a formal

19   office except in a location in Batts' apartment or Batts' parent's residence when Batts lived

20   with them.

21        35. Observance of StreetSmarts' corporate form under the facts and

22   circumstances of this case would sanction a fraud and promote an injustice on Plaintiff.

23   Plaintiff has sufficiently proven that StreetSmarts' corporate veil should be pierced, imposing

24   joint and several liability on StreetSmarts and Batt for Plaintiff's damages. (Doc. 1 at 3, ¶ 10)

25        36. While unknown to  Plaintiff, Batt knew that StreetSmarts was financially

26   troubled and unable to pay the required payroll withholding taxes. As early as October 2009,

27   Batt knew that StreetSmarts was unable to make the payments he had promised to Plaintiff,

28   but did not inform Plaintiff of that fact, and instead continued making promises that he would

1  pay Plaintiff.

2          37. While Plaintiff has proven most of the other elements of fraud or

3  fraudulent misrepresentation by clear and convincing evidence, Plaintiff failed to prove by

4  clear and convincing evidence that Batt never intended to make the future payments he

5  promised to Plaintiff and Plaintiff's right to rely on Batt's promises. "[A] promise to perform

6  in the future is not a representation which can be shown to be true or false at the time it was

7  made, and therefore, a person has no right to rely, in a legal sense, on a representation of a

8  fact not in existence." *Denbo*, 18 Ariz.App. at 428, 503 P.2d at 386. Plaintiff's claim for

9  fraud or fraudulent misrepresentation fails.

10          38. Plaintiff has proven by a preponderance of the evidence that Batt made

11  numerous promises of future payments to Plaintiff, knowing at the time of such promises

12  StreetSmarts was insolvent and that Batt did so with the intent and express purpose of

13  securing Plaintiff's valuable future services. When sufficient money was received by

14  StreetSmarts to fully pay Plaintiff for his services, Batt wrongfully paid the money on other

15  items, including Batt's personal expenses.  Plaintiff has proven by a preponderance of the

16  evidence that Batt breached the covenant of good faith and fair dealing in the contract with

17  Plaintiff. Plaintiff is not, however, entitled to additional contractual damages for the

18  contractual breach of the covenant of good faith and fair dealing because he is awarded

19  herein full damages for breach of contract and the law does not favor a double recovery.

20  *Burkons v. Ticor Title Ins. Co. of Cal.*, 168 Ariz. 345, 355, 813 P.2d 710, 720 (Ariz. 1991)

21  (Ordinarily, a party claiming breach of an implied covenant of good faith and fair dealing is

22  limited to contract damages.); *Calmat Co. v. Westfall Industries, Inc*., 2008 WL 4138238, *

23  5 (Az.Ct.App., September 8, 2008) ("Contract damages are generally available for breach

24  of the covenant and are part of the prima facie case.").

25          39. Plaintiff failed to allege in the Complaint and prove a special relationship

26  between the parties arising from elements of the public interest, adhesion, or fiduciary

27  responsibility. Because Plaintiff did not allege and prove the necessary special relationship

28  to support a claim for breach of the implied covenant in tort, this claim fails. *Wells Fargo*

1  *Bank*, 201 Ariz. at 491, 38 P.3d at 29.

2      40. Because punitive damages may not be awarded in Arizona for a mere

3  breach of contract, Plaintiff's request for an award of punitive damages fails. *Continental*

4  *National Bank*, 107 Ariz. at 382, 489 P.2d at 19.

5      41. Plaintiff was never given the 25,000 shares of stock promised to Plaintiff

6  in his employment contract. (Doc. 1 at 8, ¶ 42; doc. 1-1, Exh A at 2-3) ("[A]s a special

7  incentive, you are also eligible for a retention bonus program. If you are an employee in good

8  standing with the company as of Feb. 1, 2009, you will be granted 25,000 shares of

9  StreetSmarts, Inc. common stock at the then fair market value.") (Doc. 1-1, Exh A at 2)

10     42. Plaintiff is not entitled to recover the fair market value of the 50,000 shares

11 of StreetSmarts' stock options promised to Plaintiff in his employment contract because a

12 plain reading of the contract requires Plaintiff to be a StreetSmarts' employee for "over a four

13 year period" before the shares vest to Plaintiff. Plaintiff was not an employee of StreetSmarts

14 for over four years. (*Id.*) Batt's July 13, 2009 letter to Plaintiff, which confirmed Plaintiff's

15 pay raise to $90,000.00 per year, paid semimonthly in the sum of $3700.00 gross, did "not

16 alter the stock grant nor the stock option program described in [Batt's] offer letter of

17 11/25/2008." (Doc. 1-1, Exh B at 5) (language within quotation marks handwritten and

18 initialed by Plaintiff).

19     43. Plaintiff failed to prove the fair market value the 25,000 shares of stock

20 owed to Plaintiff with reasonable certainty.

21     44. Plaintiff's negligent misrepresentation claim cannot stand on Batt's

22 promises of future conduct and, "unlike fraud, cannot even stand on a 'promise made without

23 present intention to perform.'" *Frank Lloyd Wright Foundation*, 697 F.Supp.2d at 1130.

24 Because Batt's numerous promises that StreetSmarts or Batt would honor their contractual

25 commitments to pay Plaintiff his unpaid wages were clearly promises of future conduct,

26 Plaintiff's negligent misrepresentation claim fails. *Frank Lloyd Wright Foundation*, 2008 WL

27 5111092, * 3 (D.Ariz., Dec. 3, 2008).

28     45. Because Plaintiff had a specific written contract with StreetSmarts which

governed the relationship of the parties, Plaintiff's claim of unjust enrichment fails. *McNutt*, 2010 WL 3702509 at 2.

46. Plaintiff has not demonstrated that he is entitled to an award of $30,922.18, or any sum of money, in unpaid employment taxes because Plaintiff failed to show, that he, as the employee, is legally obligated to pay StreetSmarts' portion of Plaintiff's employment taxes, FICA, FUTA and SUTA out of any award herein.[8] *San Francisco Baseball Assoc. L.P. v. United States*, 88 F.Supp.2d 1087, 1090-91 (N.D.Cal. 2000) (general discussion of employment taxes).

47. The fair and reasonable amount of treble damages that should be awarded to Plaintiff is the sum of $164,479.56, jointly and severally, against Defendants StreetSmarts and Batt, plus 10% interest pursuant to A.R.S. § 44-1201(A) from August 15, 2009 to June 30, 2011 in the amount of $30,839.85 (10% x. $164,479.56 = $16,447.96 divided by 12 = $1,370.66 per month x. 22.5 months = $30,839.85), and Plaintiff's costs incurred herein, excluding any attorneys' fees.

**VI. Conclusions of Law**

1. "[F]ederal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law." *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003). Arizona substantive law applies to this diversity action. The Court makes the following conclusions of law:

2. This District Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1), because the amount in controversy exceeds $75,000 and the parties are completely diverse.

3. It reasonable to exercise specific jurisdiction over the non-resident

---

[8] "FICA refers to Social Security or Federal Insurance Contribution Act taxes. FUTA refers to Federal Unemployment Tax Act taxes. SUTA refers to the state analogues of the FUTA taxes. In the case at bar, SUTA will refer to [the Arizona] counterpart to FUTA." *Hathcock v. Acme Truck Lines, Inc*., 262 F.3d 522, 524 n. 8 (5th Cir. 2001).

Defendants in Arizona. The extent of Defendants' purposeful interjection into Arizona, the minimal burden on Defendants, the services performed by Plaintiff in Arizona for Defendants, the lack of conflict with Defendants' home states, the harm occurring in Arizona to Plaintiff, Arizona's interest in adjudicating the dispute, the convenience to Plaintiff to seek redress in Arizona, and the Court's interest in efficiency weigh in favor of finding jurisdiction in Arizona reasonable. Thus, specific personal jurisdiction exists over Defendants StreetSmarts and Batt in Arizona.

4.  Defendants StreetSmarts and Batt were  properly and lawfully served with the Summons and Complaint in accordance with federal and Illinois procedural law, respectively.[9]

5. Plaintiff expressly consented in writing to magistrate-judge jurisdiction, doc. 6, pursuant to 28 U.S.C. § 636(c) and, therefore, this Magistrate Judge has jurisdiction to issue this Report and Recommendation.

6. This Magistrate Judge has authority to recommend a non-final and independent determination of fact and law that default judgment be entered against Defendants without the consent of the Defendants.  *Wang v. Masaitis*, 416  F.3d. 992 , 999 (9th Cir. 2005) (holding that the magistrate judge was well within her authority to issue an report and recommendation on Wang's habeas petition without Wang's consent for *de novo* review by district judge); 28 U.S.C. § 636(b)(1)(A);  LRCiv. 72.2(a)(1).

7. Based on the evidence presented and the record herein, there was an offer, an acceptance, consideration, and sufficient specification of the terms of Plaintiff's salary and other benefits to determine Defendants' obligations to pay Plaintiff.

---

[9]  Federal Rule of Civil Procedure 4 contains detailed provisions on the manner in which service should occur, and a plaintiff may utilize the service of process rules that apply in the state in which the federal district court is located or, if service is effected in another state, the rules of that state. Fed.R.Civ.P. 4(e)(1). Therefore, service of process will be upheld if it conforms to either federal or applicable state service of process rules. *Robinson v. Heritage Elementary School*, 2009 WL 1578313, * 2 (D.Ariz. 2009).

8. Defendants StreetSmarts and Batt and Plaintiff executed a binding, enforceable contract for the compensation and other benefits in return for Plaintiff's services for and on behalf of Defendants.

9. Defendants StreetSmarts and Batt wilfully and wrongfully breached the employment contract with Plaintiff by failing to pay Plaintiff his full salary and other benefits, entitling Plaintiff to recover contractual and treble damages as alleged in Count I of the Complaint. (Doc. 1 at 11-12)

10. At all times material herein, Plaintiff was an "employee" of Defendants and his salary, deferred compensation and other benefits constituted "wages" within the meaning of A.R.S. § 23-350(2),(5). *Schade*, 158 Ariz. at 11, 760 P.2d at 1060.

11. Plaintiff is entitled to an award of treble damages of the $54,826.52[10] in unpaid wages which amounts to $164,479.56, jointly and severally, against Defendants. ($54,826.52 x 3 = $164,479.56) (Docs. 23 at 14; 1-1, Exh D, at 13; Tr. at 34-35)  This amount of money was reasonably proven by Plaintiff at the default damages hearing.

12. Defendant StreetSmarts is the "alter ego" of Defendant Batt. There is such a unity of interest and ownership of Defendant StreetSmarts by Batt that the separate personalities of StreetSmarts and Batt ceased to exist.

13. StreetSmarts' corporate veil should be pierced, imposing joint and several liability on StreetSmarts and Batt for Plaintiff's damages. (Doc. 1 at 3, ¶ 10)

14. Plaintiff is the prevailing party in this action. Although this is a harsh, unfair result in this case, Plaintiff's request for an award of its reasonable attorneys' fees incurred in this uncontested action are not allowed under either A.R.S. § 12-341.01(A) or the parties' contract.

15. Plaintiff's claims or causes of action for fraud or fraudulent misrepresentation,  breach of the implied covenant of good faith and fair dealing in tort,

---

[10] This sum includes the unreimbursed telephones expenses, medical and dental expenses due Plaintiff. (Doc. 1-1, Exh Dat 13)

punitive damages, reasonable value of StreetSmarts' stock and stock options, negligent misrepresentation, unjust enrichment, unpaid employment taxes, and an award of attorneys' fees as the prevailing party fail.

Accordingly,

**IT IS RECOMMENDED** as follows:

1. Plaintiff's Applications for Entry of Default Judgment, docs. 16, 35, against Defendants StreetSmarts and Batt be **GRANTED**;

2. Plaintiff's Motions for Award of Attorneys' Fees and Costs *etc*, docs. 24, 38, be **DENIED**; and

3. Judgment be entered in favor of Plaintiff Craig Thompson and against Defendants StreetSmarts and Batt, jointly and severally, in the amount of $195,319.41, plus Plaintiff's taxable costs allowed by Rule 54(d)(1), LRCiv 54.1, and 28 U.S.C. § 1920. See, *In re Apollo Group, Inc. Securities Litigation*, 2009 WL 2169178 (D.Ariz., July 17, 2009). The Judgment shall earn interest at the annual federal rate from the date of entry of this Judgment until paid in full.

**IT IS FURTHER ORDERED** that if this Report and Recommendation is approved by Senior United States District Judge Stephen M. McNamee or if he otherwise directs, the Clerk is kindly directed to enter Judgment consistent with this Order pursuant to Rule 58(a), (b)(2), Fed.R.Civ.P.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. 28 U.S.C. § 636(b)(1), as amended on December 1, 2009[11]; Rules 72 and 6, Federal Rules of Civil Procedure, as amended on December 1, 2009. Thereafter, the parties have fourteen (14) days within which to file a

---

[11] See, Statutory Time-Periods Technical Amendments Act of 2009. H.R. 1626.

response to the objections. Rule 72(b)(2), Fed.R.Civ.P. Failure to file timely objections to this Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Judge without further review. *United States v. Reyna- Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determinations of this Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this Magistrate Judge's recommendations. Rule 72, Federal Rules of Civil Procedure.

Dated this 30th day of June, 2011.

Lawrence O. Anderson
United States Magistrate Judge